IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRAIG W. CALDER,                              Case No. 6:12-cv-01943-AA
                                                  OPINION AND ORDER
        Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

_____

Drew L. Johnson
Kathryn Tassinari
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, Oregon 97401
    Attorneys for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Sarah L. Martin
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1  - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Craig Calder brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On September 5, 2008, plaintiff applied for DIB and SSI, initially alleging disability as of March 1, 2007. Tr. 149, 152. Plaintiff's applications were denied initially and upon reconsideration. Tr. 92-99. Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 105-06. On January 5, 2011 and July 22, 2011, ALJ hearings were held before the Honorable Marilyn Mauer. Tr. 8-21, 48-87. At the second hearing, plaintiff amended his alleged onset date to October 1, 2010. Tr. 16. Plaintiff testified at both hearings, along with a vocational expert ("VE"), and was represented by counsel. Tr. 9, 16, 49. On September 29, 2011, the ALJ issued a decision finding plaintiff not disabled under the Act. Tr. 26-37. The Appeals Council denied plaintiff's request for review and plaintiff then filed a complaint before this Court. Tr. 1-4.

## STATEMENT OF FACTS

Plaintiff was born on August 15, 1958 and was 52 years-old on the amended alleged onset date of disability, as well as at the time of both hearings.  Tr. 54,149.  Plaintiff completed the eleventh grade in high school and has no past relevant work, due in part to his history of incarceration.  Tr. 36, 176.  He  alleges that he is unable to work due to mental illness, back pain, and permanent brain damage from an overdose on medication.  Tr. 171, 465.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an

Page 3  - OPINION AND ORDER

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 416.920, 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 416.920(b), 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 416.920(c), 404.1520(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 416.920(d), 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 416.920(e),

404.1520(e) & (f).  If the claimant can work, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Commissioner.  At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national and local economy.  <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 416.920(e) & (f), 404.1520(g).  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 416.966, 404.1520(g).

## THE ALJ'S FINDINGS

At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the amended alleged onset date.  Tr. 28.  At step two, the ALJ determined that plaintiff suffers from the following severe impairments: borderline intellectual functioning, major depressive disorder with psychotic features, opiate addiction on methadone therapy, personality disorder, headache disorder, status post right ulnar nerve transposition surgery, and mild chronic obstructive pulmonary disease.  Tr. 29.  At step three, the ALJ determined that plaintiff's impairments do not meet or equal the requirements of a listed impairment.  Tr. 30.

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work.  Tr. 31. Due to plaintiff's sudden headaches, he must avoid workplace hazards and exposure to loud noises.  <u>Id.</u> Plaintiff may not climb

ladders, ropes, or scaffolds. Id. He can perform tasks that are no more complex than a specific vocational preparation level of two. Id. Plaintiff may not have concentrated exposure to inhaled irritants or more than occasional contact with the public. Id.

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 36. At step five, the ALJ determined that jobs existed in the national economy in significant numbers that plaintiff could perform despite his limitations, such as garment sorter, racker, and laundry sorter. Id. Ultimately, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 37.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) finding him not credible; (2) improperly weighing the medical evidence; and (3) failing to account for all his limitations in the RFC.

I.  Plaintiff's Credibility

Plaintiff contends the ALJ erred by improperly rejecting his testimony. While assessing credibility, the ALJ must first determine whether objective medical evidence exists of an impairment that could reasonably produce the alleged symptoms. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citations omitted). If such evidence exists and there is no affirmative evidence of malingering, the ALJ must provide "clear and convincing reasons" to properly reject a claimant's testimony. Id. The ALJ must identify what testimony is not credible and the evidence that

undermines the claimant's allegations. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). If the ALJ's credibility determination is supported by substantial evidence, the Court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his testimony concerning the severity and extent of those symptoms was not fully credible. Tr. 33. The ALJ articulated several factors that undermined plaintiff's credibility: inconsistencies in his testimony, his previous incarceration for dishonesty-related crimes, and his history of drug-seeking behavior. Id.

First, the ALJ found that plaintiff's inconsistent statements to treatment providers belied his credibility. Id. Inconsistencies between the claimant's testimony and conduct is a clear and convincing reason to reject that testimony. Thomas, 278 F.3d at 958-59. As the ALJ noted, plaintiff testified at the hearing that, beginning in 2007, he continuously suffers from headaches and suicidal ideations that impede his ability to work. Tr. 60, 62. Plaintiff, however, did not complain to treatment providers about headaches or suicidal ideation until mid-2009. Tr. 481 (denying suicidal ideation in August 2008), 486 (failing to report headaches in October 2009), 565 (denying suicidal ideation

and failing to report headaches in February 2009), 662 (denying suicidal ideation and failing to report headaches in April 2009), 663 (denying suicidal ideation and failing to report headaches in June 2009), 665 (failing to report headaches in July 2009), 667 (complaining of suicidal thoughts but denying any plans and failing to report headaches in September 2009).

The ALJ noted further inconsistencies between plaintiff's testimony and treatment notes regarding his heroin use. Tr. 33. At the hearing, plaintiff testified that he relapsed on heroin in December 2009 for "just two days." Tr. 59. The medical record reveals that plaintiff first self-reported relapsing on heroin on December 7, 2009. Tr. 673. Yet on December 22, 2009, plaintiff admitted to a treatment provider "that he is back to using heroin." Tr. 750. More recently, plaintiff told a treatment provider that he quit recreational drugs in 2007 while requesting methadone. Tr. 825-26. Therefore, the ALJ provided a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements.

Additionally, the ALJ considered plaintiff's previous incarceration for dishonestly-related crimes. Tr. 33. The ALJ may use ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness, including any convictions for crimes involving dishonesty. Albidrez v. Astrue, 504 F.Supp.2d 814, 822 (C.D.Cal. 2007); Brown v. Comm'r of Soc.

Sec. Admin., 2011 WL 5117911, *6 (D.Or. Oct. 26, 2011).

In 2006, plaintiff was convicted of burglary in the second degree for stealing payroll and forging a check. Tr. 477, 942. Plaintiff was also incarcerated in 1990 and 1981 for convictions regarding forgery offenses. Id. Thus, because they arose out of crimes of dishonesty, the ALJ reasonably found that these convictions adversely impacted plaintiff's credibility.

Finally, the ALJ determined that plaintiff's history of drug-seeking behavior impugned his credibility. Tr. 33. The ALJ may consider drug-seeking behavior while evaluating the claimant's credibility. See Alexander v. Comm'r of Soc. Sec. Admin., 373 Fed.Appx. 741, 743-44 (9th Cir. 2010). The record demonstrates that plaintiff repeatedly requested narcotics from several treatment providers. Tr. 625, 761, 764, 767, 825. Plaintiff also requested additional pain medications because his prescription was allegedly stolen. Tr. 629, 631. Moreover, multiple treatment providers have been reluctant to provide plaintiff with narcotics because of his drug-seeking behavior and history of addiction. Tr. 743, 764, 779, 840, 846, 857. In fact, one treatment provider noted that plaintiff "essentially wishes to establish . . . with a physician who will prescribe methadone" and objected "to being put in the position of prescribing methadone to somebody who doesn't even live in [her] County." Tr. 779-80.

In sum, the ALJ provided clear and convincing reasons,

supported by substantial evidence, for rejecting plaintiff's testimony regarding the alleged severity and extent of his symptoms. Accordingly, the ALJ's credibility determination is affirmed.

II. <u>Medical Evidence</u>

Plaintiff argues that the ALJ improperly rejected the medical opinions of Terri Robinson, M.D., Karen Bennett, Ph.D., Timothy Hofeldt, M.D., William McConochie, Ph.D., and Keith McKee, Ph.D.

Social security cases may involve medical opinions from treating, examining, or non-examining doctors. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). In general, a treating doctor's opinion is given more weight than an examining doctor's opinion and an examining doctor's opinion is given more weight than a non-examining doctor's opinion. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001). To reject the uncontested opinion of a treating or examining doctor, the ALJ must provide clear and convincing reasons supported by substantial evidence. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005). To reject the opinion of a treating or examining doctor that is contradicted by another doctor's opinion, the ALJ must provide specific and legitimate reasons. <u>Id.</u>

A. <u>Dr. Robinson</u>

In October 2008, plaintiff attended a medical evaluation, to assess his back pain, with DeWade Perry, M.D. Tr. 486. During the

evaluation, Dr. Perry had access to plaintiff's medical records. Id. Dr. Perry concluded that plaintiff could stand and walk for six hours in an eight-hour workday. Tr. 490. Also in October 2008, an imaging study of plaintiff's back showed mild convex right scoliosis with no other abnormalities. Tr. 491.

In January 2009, plaintiff attended another back evaluation with Dr. Robinson. Tr. 522. Unlike Dr. Perry, Dr. Robinson did not have any access to plaintiff's medical records, including the 2008 imaging study. Id. Based on plaintiff's self-reports, Dr. Robinson concluded that plaintiff could stand and walk two hours in an eight-hour workday. Tr. 526. Dr. Robinson, however, recommended further evaluation through a radiograph. Id.

In addressing these reports, the ALJ set out the summary of the relevant facts as they related to each doctor. Tr. 35. The ALJ discussed the difference between Dr. Robinson's and Dr. Perry's opinions and the evidence used by each, including the imaging study from October 2008 that revealed essentially normal results. Id. Ultimately, the ALJ elected to give more weight to Dr. Perry's report concerning plaintiff's ability to stand and walk due to the fact that Dr. Perry had access to plaintiff's medical records. Id. "The ALJ [furnishes a specific and legitimate reason to reject a controverted medical opinion] by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings."

Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). That is precisely what the ALJ did here. Thus, the ALJ presented a specific and legitimate reason for rejecting Dr. Robinson's opinion in favor of Dr. Perry's opinion.

B.  Drs. Bennett and Hofeldt

In May 2011, plaintiff attended a psychiatric evaluation with Dr. Bennett following his voluntary admission into a psychiatric unit several days after he allegedly attempted suicide. Tr. 15, 947-48. Based on this one-time assessment, Dr. Bennett completed a mental RFC in July 2011, in which she concluded that plaintiff has mild to moderately severe limitations in understanding and memory, mild to moderately severe limitations in sustained concentration and persistence, mild to moderately severe limitations in social interaction, and moderate to moderately severe limitations in adaptation. Tr. 988-91.

In July 2011, while still voluntarily admitted, plaintiff attended a psychiatric evaluation with Dr. Hofeldt. Tr. 1002-07. Dr. Hofeldt also completed mental RFC assessments in July 2011 and August 2011. Tr. 992-95, 1023-24. In his July assessment, Dr. Hofeldt concluded that plaintiff has severe limitations in understanding and memory, moderate to severe limitations in sustained concentration and persistence, moderately severe to severe limitations in social interaction, and moderately severe to severe limitations in adaptation. Tr. 992-95. Dr. Hofeldt's

August assessment outlined similar limitations.  Tr. 1023-24.

The ALJ partially discredited Dr. Bennett's and Dr. Hofeldt's opinions because both doctors relied on plaintiff's subjective reports.  Tr. 35.  The ALJ need not credit medical opinions that are based largely on claimant's subjective complaints.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The record demonstrates here that both doctors' psychiatric evaluations were based entirely on plaintiff's self-reports.  Tr. 940-45, 1002-07.  For example, each doctor's RFC assessment was based on a form that asked plaintiff to describe his "current symptoms," "situation leading to visit," psychiatric history, etc. Tr. 940-45, 1002-07.  There is no evidence that either doctor reviewed plaintiff's medical records or performed any objective testing.  Tr. 940-45, 988-91, 992-95, 1002-07, 1023-24.  As such, the ALJ provided a legally sufficient reason, supported by substantial evidence, for rejecting the opinions of Drs. Bennett and Hofeldt.

The ALJ also discredited these doctors' reports due to the lack of evidence indicating that plaintiff's "condition will remain at the level reported in July 2011 for 12 continuous months or that his condition at that time was representative of his mental functioning as of the amended alleged onset date of October 1, 2012 - or any 12-month period thereafter."  Tr. 35.  A claimant's medically determinable impairment must be expected to last for a

continuous period not less than twelve months in order to qualify as a disability under the Act. Smolen, 80 F.3d at 1280-81; 42 U.S.C. § 423(d)(1)(A).

As the ALJ concluded, there is no evidence in the record indicating that plaintiff's level of mental functioning, as reported by Drs. Bennett and Hofeldt, would persist for at least a twelve-month period. Tr. 35. This is in part because each doctor's assessment was a one-time evaluation performed pursuant to plaintiff's alleged suicide attempt. Id. More recent medical evidence shows a decrease in plaintiff's mental health symptoms. Tr. 543-45, 613-15. The ALJ therefore properly rejected Dr. Bennett's and Dr. Hofeldt's opinions.

C. Drs. McConochie and McKee

Plaintiff was initially evaluated by Dr. McKee in April 2007 when he was admitted to a hospital following a suicide attempt. Tr. 377-82. Plaintiff was discharged from Dr. McKee's supervision in July 2007. Id. Upon discharge, Dr. McKee concluded that plaintiff had borderline intellectual functioning and difficulties in short-term and immediate memory. Tr. 382. Dr. McKee opined that plaintiff may have difficulty keeping up with his peers in a variety of situations that require thinking and reasoning abilities. Id.

In January 2009, plaintiff attended an intellectual evaluation with Dr. McConochie. Tr. 515-20. Dr. McConochie concluded that

Page 14 - OPINION AND ORDER

plaintiff would have mild impairments in understanding and remembering instructions, moderate impairments in sustaining concentration, attention, and persistence, and mild impairments in engaging in appropriate social interaction. Tr. 519.

The ALJ did not address these doctors' reports in his decision. Tr. 26-37. The ALJ, however, need not discuss all the evidence presented. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, the ALJ only must "explain why significant probative evidence has been rejected." Id. at 1935 (citations and internal quotations omitted). Medical opinions issued prior to the alleged onset date of disability are of limited relevance. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008).

Initially, the ALJ's RFC for work involving occasional public contact and tasks that are no more complex than a specific vocational preparation level of two is sufficient to account for the limitations outlined in Dr. McConochie's report. Tr. 31. In any event, plaintiff's amended alleged onset date is October 1, 2010. Tr. 16. Therefore, Dr. McConochie's and Dr. McKee's evaluations were issued approximately two and three years, respectively, before the relevant time period.[1] Tr. 377, 464,

---

[1] The Court notes further that plaintiff maintained employment for ten months following Dr. McKee's and Dr. McConochie's evaluations. Tr. 245-61. Plaintiff admits that he quit this job due to headaches, as opposed to his psychological impairments. Tr. 57.

Page 15 - OPINION AND ORDER

515.  As such, these reports are neither significant nor probative,
such that the ALJ was not required to discuss them.  Therefore, the
ALJ'S evaluation of the medical evidence is affirmed.

III.  <u>RFC Assessment and Step Five Finding</u>

Finally, plaintiff contends that the ALJ'S RFC and step five
finding are erroneous because they do not account for the opinions
of Drs. Robinson, Bennett, Hofeldt, McConochie, and McKee.  Pl.'s
Opening Br. 19-20.  The RFC is the most a claimant can do despite
the  claimant's  limitations.    20   C.F.R.   §§  416.945(a)(1),
404.1545(a)(1).  When assessing a claimant's RFC, the ALJ must
consider all of the claimant's medically determinable limitations,
including those that are not severe.  20 C.F.R. §§ 416.945(a)(2),
404.1545(a)(2).  The ALJ is only required incorporate limitations
into the RFC and dispositive hypothetical question posed to the VE
that  are  supported  by  substantial  evidence  in  the  record.
<u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

As discussed above, the ALJ properly discredited the opinions
of  Drs.  Robinson,  Bennett,  Hofeldt,  McConochie,  and  McKee.
Additionally, the ALJ properly discredited plaintiff's testimony.
The  ALJ  therefore  was  not  required  to  include  limitations
identified by the aforementioned sources in the RFC or dispositive
hypothetical questions posed to the VE.  <u>Bayliss</u>, 427 F.3d at 1217-
18; <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1175-76 (9th Cir.
2008).  In sum, the ALJ's determination that plaintiff retains the

Page 16 - OPINION AND ORDER

ability to perform a limited range of light work is rational and may not be disturbed.  See Tr. 26-37; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004) (court must defer to ALJ's rational interpretation of the evidence).

### CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.
Dated this ___23___ day of February 2014.

_____
Ann Aiken
United States District Judge